1

2

3                                                        O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  LEGACY VILLAS AT LA      )   Case No. EDCV 11-00845 VAP
    QUINTA HOMEOWNERS        )   (OPx)
12  ASSOCIATION,             )
                             )   **ORDER GRANTING DEFENDANTS'**
13              Plaintiff,   )   **MOTION TO DISQUALIFY**
                             )   **PLAINTIFF'S COUNSEL PETERS &**
14       v.                  )   **FREEDMAN, LLP**
                             )
15  CENTEX HOMES, et al.     )
                             )
16              Defendants.  )
17  _____

18       Before the Court is a Motion to Disqualify

19  Plaintiff's Counsel, Peters & Freedman, LLP, filed by

20  Defendants Centex Homes, Centex Real Estate Corp., Centex

21  Real Estate Holding, and Nomas Corp. (collectively

22  "Defendants").  After considering the papers in support

23  of, and in opposition to, the Motion, the Court GRANTS

24  the Motion.

25

26                     **I. BACKGROUND**

27       Plaintiff Legacy Villas at La Quinta Homeowners

28  Association ("Plaintiff") is an association of

condominium unit owners in a condominium development. Plaintiff claims that Defendant Centex Homes ("Centex"), as the builder and developer of the condominium development, controlled Plaintiff through its employees and others who were original and successor members of Plaintiff's Board of Directors ("Board").  On April 15, 2011, Plaintiff filed its complaint in the California Superior Court for the County of Riverside, alleging Centex breached its fiduciary duty to Plaintiff by: (1) establishing and under-funding Plaintiff's budget; (2) failing to assess properly the property for adequate reserve funds; (3) mismanaging Plaintiff's finances by making unwarranted expenditures; (4) spending in excess of revenues each month; and (5) keeping homeowner assessments artificially low to promote sales. (See Not. of Removal, Ex. A ("Compl.").)  Plaintiff filed its First Amended Complaint ("FAC") on January 17, 2012, alleging identical claims and adding as Defendants Centex's general partners.  (Doc. No. 33.)

On March 23, 2012, Defendants filed this Motion, (Doc. No. 42), seeking to disqualify Plaintiff's counsel Peters & Freedman on the following grounds: 1) counsel's representation of Plaintiff gives rise to the appearance of impropriety; 2) counsel failed to provide mandated warnings to Plaintiff to obtain independent counsel; 3) counsel created an implied - if not express - attorney-

1  client relationship with Centex; and 4) counsel is a key
2  witness in the lawsuit.  (Mot. at 1.)  In support of the
3  Motion, Defendants submitted the Declaration of Stuart W.
4  Price ("Price Declaration"), and the Declaration of Jayne
5  Carilo ("Carilo Declaration") with exhibits one through
6  20.  (Doc Nos. 42-2, 42-3.)

7

8      Plaintiff filed its Opposition on April 2, 2012,
9  along with the Declarations of Zachary R. Smith ("Smith
10  Declaration") and David M. Peters ("Peters Declaration").
11  (Doc No. 43.)  Plaintiff also filed its Objections to Ms.
12  Carilo's Declaration.  (Doc No. 43-1.)

13

14     Defendants filed their Reply on April 9, 2012, as
15  well as their Response to Plaintiff's Objections to Ms.
16  Carilo's Declaration, their Evidentiary Objections to Mr.
17  Peters's Declaration and Mr. Smith's Declaration, and the
18  Declaration of Brendon K. Barton ("Barton Declaration").
19  (Doc. No. 44.)

20

21              **II. EVIDENTIARY OBJECTIONS**
22     Plaintiff raises a general objection to Ms. Carilo's
23  Declaration on the grounds that Plaintiff has not had an
24  opportunity to depose and cross-examine Ms. Carilo.
25  (Pl.'s Objections to Carilo Decl. ("Pl.'s Objections") at
26  2.)  Ms. Carilo's deposition was originally scheduled for
27  March 19, 2012; however, the parties agreed to reschedule
28

1    the deposition to April 10, 2012.  (Id.)  Plaintiff

2    contends Defendants brought this Motion based on Ms.

3    Carilo's Declaration after Plaintiff had already agreed

4    to move the deposition.  (Id.)  According to Defendants,

5    however, Plaintiff declined Defendants' offer to continue

6    the hearing date on the Motion in order to allow for

7    Plaintiff to take Ms. Carilo's deposition.  (Def.'s Opp'n

8    to Pl.'s Objections at 2.)  The Court therefore overrules

9    Plaintiff's general objection to Ms. Carilo's

10   Declaration.

11

12       Plaintiff objects specifically to paragraphs 31, 32,

13   and 33 of Ms. Carilo's Declaration on the grounds that

14   the statements are protected by the attorney-client

15   privilege, are inadmissible hearsay, and lack

16   foundation.[1]  (Pl.'s Objections at 2-3.)  Defendants

17   contend Plaintiff waived its attorney-client privilege

18   because Plaintiff asserts a claim that places at issue

19   the nature of the privileged material.  (Def.'s Opp'n to

20   Pl.'s Objections at 3 (citing Bittaker v. Woodford, 331

21   F.3d 715, 719 (9th Cir. 2003)).)

22

23       The Court agrees.  Plaintiff's claim for breach of

24   fiduciary duties puts at issue the documents Peters &

25   Freedman provided to Defendants when advising Defendants

26   on their management of the Board.  The Court therefore

27   _____
     [1] To the extent the Court does not address Plaintiff's
     Objections, the Court has not relied on this evidence in
28   ruling on the Motion.

4

1   overrules Plaintiff's objections based on attorney-client
2   privilege.  Additionally, Ms. Carilo's statements about
3   her own understanding of the nature of Peters &
4   Freedman's advice are not hearsay.  The Court therefore
5   finds Ms. Carilo's statements in paragraphs 31, 32, and
6   33 of her Declaration admissible.

7

8       Plaintiff also objects to exhibit ten to Ms. Carilo's
9   Declaration, a copy of Peters & Freedman's proposal to
10  provide legal services to the Board, dated April 25,
11  2006, on the grounds that the proposal is protected by
12  the attorney-client privilege, lacks foundation, and is
13  hearsay.  (Pl.'s Objections at 4.)  The Court overrules
14  this objection.

15

16      Plaintiff objects on the same grounds to exhibit 15
17  to Ms. Carilo's Declaration, a letter dated November 1,
18  2007, between Peters & Freedman and the Board describing
19  counsel's efforts in handling delinquent assessments,
20  issuing notices of default, and title reports ordered.
21  (<u>Id.</u>)  The Court overrules this objection as Ms. Carilo's
22  Declaration lays the proper foundation for the letter to
23  qualify as a business record.  California Evidence Code
24  Section 1271 provides that evidence of a writing made as
25  the record of an act, condition or event is not made
26  inadmissible by the hearsay rule if the following four
27  conditions are met: (1) the writing was made in the
28

regular course of a business; (2) it was made at or near the time of the event; (3) the custodian or another qualified witness testifies about the writing's identity and mode of preparation; and (4) "[t]he sources of information and method and time of preparation were such as to indicate its trustworthiness."  Cal. Evid. Code § 1271(a)-(d).  "The proponent of the evidence has the burden of establishing trustworthiness."  <u>People v. Beeler</u>, 9 Cal. 4th 953, 978 (1995).

Here, Peters & Freedman's November 1, 2007, letter describes the firm's recent and current efforts to collect delinquent accounts.  (Carilo Decl. Ex. 15.) Peters & Freedman wrote the letter as part of its regular business in handling the delinquent accounts for Defendants.  (<u>Id.</u> ¶ 31.)  Ms. Carilo verifies in her Declaration that the Board received this letter and the letter was a "periodic update."  (<u>Id.</u>)  Finally, the Court finds the information contained in the letter, specifically the names and account numbers associated with each delinquent account, provide details supporting its trustworthiness.  The Court therefore overrules Plaintiff's objection to exhibit 15.

Finally, Plaintiff objects to exhibit 16, the "Developer Transition Checklist" which Peters & Freedman

drafted and sent to Ms. Carilo, on the grounds that the document is protected by the attorney-client privilege and the attorney work product doctrine, lacks foundation, and is hearsay.  For the reasons discussed above, the Court also overrules this objection.

### III. FACTS RELEVANT TO DISQUALIFICATION

Centex developed the Legacy Villas community of 280 condominiums and town houses in 2002.  (Id. ¶ 4.)  Centex created and incorporated the Legacy Villa Homeowners Association ("HOA") on November 30, 2004, to manage the development, and on February 1, 2005, Centex appointed three Centex employees to serve as the initial members of the Board.  (Id. ¶¶ 7, 9.)

The Board retained Peters & Freedman to serve as the HOA's legal counsel on May 11, 2006.  (Id. ¶ 13, Exs. 9, 10.)  As legal counsel to the Board, Peters & Freedman assumed "fiduciary duties, including the duty to communicate fully to the Board all information in its possession concerning and affecting the Association's right, responsibilities and business affairs."  (Id. Ex. 10 ¶ 9.)

The HOA held its first annual meeting on May 25, 2006, during which the Board elected two additional members, including one Centex employee and one homeowner.

1 (<u>Id.</u> ¶¶ 22-23.)  David Peters of Peters & Freedman

2 facilitated the meeting.  (<u>Id.</u> Ex. 11.)

3

4     On December 1, 2006, the Board requested Peters &

5 Freedman assist with the collection of delinquent

6 homeowner accounts.  (<u>Id.</u> ¶ 30.)  Counsel provided the

7 Board with periodic updates on its collection efforts,

8 ordered title reports on properties, and prepared notices

9 of default.  (<u>Id.</u> ¶ 31, Ex. 15.)

10

11     Centex employees maintained majority control of the

12 Board until May 30, 2008, when Centex turned control of

13 the HOA over to the homeowners.  (<u>Id.</u> ¶ 25.)  Peters &

14 Freedman remained legal counsel of the Board throughout

15 this time.  At the time of the turnover, Peters &

16 Freedman provided the "Developer Transition Checklist" to

17 Centex employee Ms. Carilo, advising the "developer" on

18 what documents to provide to the homeowner-controlled

19 Board.  (<u>Id.</u> ¶ 32-33.)  Ms. Carrillo understood the

20 checklist to be advice provided to her in her capacity as

21 a Centex employee.  (<u>Id.</u> ¶ 33.)

22

23

24

25 **IV. LEGAL STANDARD**

26   "Motions to disqualify counsel are strongly

27 disfavored."  <u>Visa U.S.A., Inc. v. First Data Corp.</u>, 241

28

F. Supp. 2d 1100, 1104 (N.D. Cal. 2003) (citing <u>Gregori</u> <u>v. Bank of America</u>, 207 Cal. App. 3d 291, 300-301 (1989) ("Motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent.")); <u>In re Marvel</u>, 251 B.R. 869 (Bankr. N.D. Cal. 2000), <u>aff'd</u> 265 B.R. 605 (N.D. Cal. 2001) ("A motion for disqualification of counsel is a drastic measure which courts should hesitate to impose except when of absolute necessity.  They are often tactically motivated; they tend to derail the efficient progress of litigation.")).  "Thus, such requests 'should be subjected to particularly strict judicial scrutiny.'" <u>Id.</u> (quoting <u>Optyl Eyewear Fashion Int'l Corp. v. Style Cos.</u>, 760 F.2d 1045, 1050 (9th Cir. 1985) (citations omitted)).

"In reviewing a motion to disqualify counsel, the district court must make 'a reasoned judgment and comply with the legal principles and policies appropriate to the particular matter at issue.'" <u>Visa U.S.A., Inc.</u>, 241 F. Supp. 2d at 1104 (quoting <u>Gregori</u>, 207 Cal. App. 3d at 300 (citations omitted)).  "The district court is permitted to resolve disputed factual issues in deciding a motion for disqualification and must make findings supported by substantial evidence." <u>Id.</u> (citing <u>Dept. of Corrections v. Speedee Oil Change Syst.</u>, 20 Cal. 4th 1135, 1143 (1999)).

1

2                           **V. DISCUSSION**

3       Defendants argue that there was an implied – if not

4   express – attorney-client relationship between Peters &

5   Freedman and Centex while Centex members sat on the

6   Board.  (Mot. at 16-17.)  Defendants contend that Peters

7   & Freedman would have been in a position as counsel to

8   the Board to advise Defendants' employees on whether to

9   take certain actions as fiduciaries of Plaintiff.  (Id.

10  at 16-17.)  Thus, Defendants' attorney-client

11  relationship with Peters & Freedman involved issues that

12  substantially relate to Peters & Freedman's

13  representation of Plaintiff in this action and creates a

14  disqualifying conflict of interest.  (Id.)

15

16      Defendants also assert that Peters & Freedman may not

17  serve as trial counsel for Plaintiff because Defendants

18  may call attorneys from the firm to testify as material

19  witnesses.  (Id. at 23-25.)

20

21      Finally, Defendants argue that the law firm's

22  representation of Plaintiff gives rise to the "appearance

23  of professional impropriety" because Peters & Freedman

24  advised the Board, while Defendants' employees were still

25  members, on matters that are now the subject of

26  Plaintiff's claims.  (Mot. at 15.)

27

28

The Central District of California has adopted the Rules of Professional Conduct of the State Bar of California, and the decisions construing them, as the governing standards of professional conduct.  <u>See</u> L.R. 83-3.1.2.  Thus, the Court applies these standards in ruling on the Motion.

**A.   Timeliness of the Motion**

The Court first addresses the threshold issue of timeliness.  Plaintiff argues Defendants brought this Motion untimely because Defendants filed the Motion a year after bringing the initial Complaint.  (Opp'n at 8.) Defendants contend, however, that Plaintiff did not produce documents until January 13, 2012, showing Peters & Freedman represented the Board previously.  (Reply at 10.)  Moreover, Defendants assert it was only after reviewing these documents that they discovered Peters & Freedman's representation extended to the period when Centex employees sat on the Board.  (<u>Id.</u>)

The Court will deny a motion to disqualify where a litigant's unreasonable delay in bringing the motion indicates its purpose is to deprive the other party of counsel of choice.  <u>United States Use of Lord Electric Co. v. Titan Pac. Constr. Corp.</u>, 637 F. Supp. 1556, 1563 (W.D. Wash. 1986).  "Where the party opposing the motion can demonstrate prima facie evidence of unreasonable

delay in bringing the motion causing prejudice to the present client, disqualification should not be ordered." Zador Corp., N.V. v. C.K. Kwan, 31 Cal. App. 4th 1285, 1302 (1995) (quoting W. Cont'l Operating Co. v. Natural Gas Corp., 212 Cal. App. 3d 752, 763-64 (1989)).

The facts here, however, do not indicate Defendants' delay in bringing the Motion was unreasonable, nor that Defendants filed the Motion in an effort to interfere with Plaintiff's preparation for trial. Under the parties' stipulated discovery schedule, Defendants' counsel did not review documents produced by Plaintiff until January 13, 2012. (Barton Decl. ¶¶ 9-10.) Only then did Defendants' counsel discover Peters & Freedman had represented the Board previously when Centex employees exerted majority control of the Board. (Id. ¶¶ 10-11.) Following this discovery, Defendants' counsel investigated the potential conflict and initiated the meet and confer process. (Id. ¶¶ 12-13.) On February 13, 2012, the parties met and conferred to discuss the Motion. (Id. ¶ 13.) Unable to resolve the matter with Plaintiff, Defendants then served the Motion on March 20, 2012, and filed the Motion on March 23, 2012. (Id. ¶ 18.)

The Court finds Defendants initiated the meet and confer process in a timely manner following the discovery

1  that Peters & Freedman represented the Board previously.

2  The one month delay between this discovery and the filing

3  of the Motion, during which time Defendants' counsel

4  reviewed the relevant documents and conducted initial

5  research, does not suggest Defendants engaged in

6  unreasonable delay in an effort to interfere with

7  Plaintiff's preparation for trial.  As Plaintiff does not

8  establish prima facie evidence to show Defendants delayed

9  bringing the Motion unreasonably, the Court finds

10 Defendants' Motion is timely.

11

12 **B.  Disqualification Under California Rule of**

13     **Professional Conduct 3-310(E)**

14     Under Rule of Professional Conduct 3-310(E), "[a]

15 member shall not, without the informed written consent of

16 the client or former client,[2] accept employment adverse

17 to the client or former client where, by reason of the

18 representation of the client or former client, the member

19 has obtained confidential information material to the

20 employment."  Cal. R. Prof. Conduct 3-310(E).

21

22

23

24

25     **1.  Implied Attorney-Client Relationship Between**

26        **Centex and Peters & Freedman**

27 [2] It is undisputed that Centex did not consent in writing
   to Peters & Freedman's representation of Plaintiff in the
28 present action.

13

1    In determining whether an attorney-client
2 relationship exists, the Court considers "whether the
3 totality of the circumstances, including the parties'
4 conduct, implies an agreement by the . . . attorney not
5 to accept other representations adverse to the
6 individual['s] . . . personal interests." Responsible
7 Citizens v. Super. Ct., 16 Cal. App. 4th 1717, 1733
8 (1993).  The primary inquiry is whether the client would
9 have had a reasonable expectation that an express or
10 implied agreement existed.  Id.

11

12    Defendants argue that Peters & Freedman created an
13 attorney-client relationship with Centex and its
14 employees while serving as legal counsel to the Board
15 from May 11, 2006, to May 30, 2008.  (Mot. at 17.)  As
16 evidence of this relationship, Defendants submit a draft
17 letter Peters & Freedman wrote to Sandy Duff of "Centex
18 Destination Properties - West," on December 4, 2006,
19 providing a review of the "Merit Property Management,
20 Incorporated Full Service Management Agreement."  (Price
21 Decl. Ex. 1.)  The heading at the top of the letter
22 reads, "Attorney-Client Privileged - Do Not Disseminate
23 to Third Parties."  (Id.)  The letter goes on to advise
24 Centex that the agreement "is substantially more fair and
25 beneficial to the Legacy Villas at La Quinta Homeowner
26 Association than most management contracts."  (Id.)
27 Counsel caveats this advice, however, noting that their
28

14

"review did not include issues pertaining to costs that
are charged," and advising Centex to "inquire as to
whether such costs are reasonable."  (<u>Id.</u>)

     Defendants also submit a checklist Peters & Freedman
provided to the Board on January 8, 2008, at one of the
final meetings before Defendants turned control of the
board over to the homeowners.  (Carilo Decl. Ex. 16.)
The "Developer Transition Checklist" advised Centex
employees to turn over association documents, financial
documents, maintenance information, assurances, copies of
public reports, insurance policies, and all other
relevant contracts to the owner-controlled board.  (<u>Id.</u>)
Specifically, Peters & Freedman recommended the developer
provide "copies of the association budget," "a complete
set of financial books, records, ledgers and bills paid
dating back to the first date of operations," and "a
certified audit, prepared by an independent certified
public accountant, of the association's books from the
association's inception to the date of transfer of
control."  (<u>Id.</u>)

     Finally, Defendants provide Ms. Carilo's statement
that she understood Peters & Freedman provided her legal
advice in her capacity as a Centex employee.  (<u>Id.</u> ¶ 33.)
     The Court finds substantial evidence shows Peters &
Freedman created an implied attorney-client relationship

with Centex.  Board members could have reasonably
believed that Peters & Freedman provided legal advice to
them in their capacities as Centex employees when Peters
& Freedman gave advice on management decisions, assisted
in collecting delinquent accounts, and counseled them on
"developer turnover" of the Board.  Moreover, Peters &
Freedman's December 4, 2006, letter to "Centex
Destination Properties - West," with a heading of
"attorney-client privileged" would have created the
reasonable belief that Peters & Freedman represented
Centex.  (See Price Decl. Ex. 1.)

> **2.   Substantial Relationship Between Former and**
> **Current Representation**

In California, "[a] former client may seek to
disqualify a former attorney from representing an adverse
party by showing the former attorney actually possesses
confidential information adverse to the former client."
H. F. Ahmanson & Co. v. Salomon Brothers, Inc., 229 Cal.
App. 3d 1445, 1452 (1991).  Actual possession of
confidential information, however, need not be proved in
order to disqualify the former attorney.  It is enough to
show a "substantial relationship" between the former and
current representation.  Id.  If the former client can
establish the existence of a substantial relationship
between representations, the courts will conclusively
presume the attorney possesses confidential information

adverse to the former client.  Id.; see also Flatt v. Super. Ct., 9 Cal. 4th 275, 283 (1994) ("Where the requisite substantial relationship . . . can be demonstrated, access to confidential information . . . is *presumed* and disqualification . . . is mandatory.") (emphasis in original).  Disqualification on this basis "extends vicariously to the entire firm." Flatt, 9 Cal. 4th at 283.

The "substantial relationship" test focuses on the "similarities between the two factual situations, the legal questions posed, and the nature and extent of the attorney's involvement with the cases." H.F. Ahmanson, 229 Cal. App. 3d at 1455 (quoting Silver Chrysler Plymouth, Inc. v. Chrysler Motor Corp., 518 F.2d 751, 760 (2d Cir. 1975) (Adams, J., concurring)); see also Morrison Knudsen Corp. v. Hancock, Rothert & Bunshoft, LLP, 69 Cal. App. 4th 223, 234 (1999).  "If the former client can establish the existence of a substantial relationship between representations, the court will conclusively presume the attorney possesses confidential information adverse to the former client." H.F. Ahmanson, 229 Cal. App. 3d at 1452; see also In re Cnty. of L.A., 223 F.3d 990, 994 (9th Cir. 2000) ("'If there is a *reasonable probability* that confidences were disclosed [in an earlier representation] which would be used against the client in [a] later, adverse representation,

a substantial relationship between the two cases is presumed.'") (emphasis in original); <u>Styles v. Mumbert</u>, 164 Cal. App. 4th 1163, 1167 (2008); <u>Fox Searchlight Pictures, Inv. v. Paladino</u>, 89 Cal. App. 4th 294, 300 (2001).

Here, Peters & Freedman advised Centex and its employees on their management of the Legacy Villas during the time that Centex controlled the Board.  Thus, Plaintiff's counsel was in a position to advise Centex employees on decisions directly relating to Defendants' fiduciary duties in managing the property.  The Court therefore finds a substantial connection between the work counsel performed for Centex from May 11, 2006, to May 30, 2008, and the legal questions at issue in this case. This substantial connection creates a conflict of interest, and necessitates the disqualification of Peters & Freedman as Plaintiff's counsel.

**C.   Disqualification Under the "Advocate-Witness Rule"**

Defendants argue Peters & Freedman may not represent Plaintiff because its partners and associates are material witnesses and may be called to testify at trial. (Mot. at 23-25 (citing ABA Model Rules of Professional Conduct, Rule 3.7).)

Under the ABA Model Rules of Professional Conduct,

Rule 3.7, a lawyer cannot serve as an advocate "at a trial in which the lawyer is likely to be a necessary witness" unless an exception applies.  California Rule of Professional Conduct 5-210 also prohibits trial counsel in a jury trial from testifying as a witness in the trial.  In interpreting this rule, the California Supreme Court has held that where an attorney will likely testify as a material witness the attorney should "'resolve any doubt in favor of preserving the integrity of his testimony and against his continued participation as trial counsel,'" and withdraw.  <u>People v. Dunkle</u>, 36 Cal. 4th 861, 915 (2005) (quoting <u>Comden v. Super. Ct.</u>, 20 Cal. 3d 906, 915 (1978)).

Plaintiff contends disqualification is not necessary here because neither of the Peters & Freedman attorneys with potential percipient knowledge will appear as witnesses, nor will these attorneys serve as trial counsel.  (Opp'n at 10.)  Plaintiff also asserts that California Rule of Professional Conduct 5-210 does not require recusal since this will not be a jury trial.  (<u>Id.</u>)

The Court does not find Plaintiff's points persuasive.  First, while Plaintiff may not plan on calling attorneys from Peters & Freedman as witnesses, nothing guarantees that Defendants will not call

Plaintiff's trial counsel.  Defendants contend, in fact, that Peters & Freedman lawyers are all relevant witnesses to the extent that the attorneys have knowledge of the firm's actions or inactions in representing the Board. (Reply at 9.)

Second, while California Rule of Professional Conduct 5-210 only applies to jury trials, the California Court of Appeal has applied the "advocate-witness rule" to bench trials as well.  In <u>Kennedy v. Eldridge</u>, the court upheld the trial court's disqualification of counsel in a bench trial based on the "advocate-witness rule," finding that "[m]ost of the difficulties inherent in an attorney's taking on the role of both advocate and witness are present regardless of whether the attorney's testimony will be given in front of a jury or a judge." 201 Cal. App. 4th 1197, 1210 (2011).

As Defendants may call attorneys from Peters & Freedman to testify at trial, the Court finds Peters & Freedman may not serve as Plaintiff's trial counsel.

**D.   Canon 9 of American Bar Association's Model Code of Professional Responsibility**

Canon 9 of the American Bar Association's Model Code of Professional Responsibility states: "a lawyer should avoid even the appearance of professional impropriety." The Ninth Circuit has held that the violation of Canon 9

is an independent basis for disqualification.  <u>See</u> <u>In re</u>
<u>Coordinated Pretrial Proceedings in Petroleum Prods.</u>
<u>Antitrust Litig.</u>, 658 F.2d 1355, 1360 (1981) ("If Canon 9
were not separately enforceable, it would be stripped of
its meaning and significance.").  Canon 9 violations,
alone, will be grounds for disqualification when "[t]he
impropriety [] affect[s] the public's view of the
judicial system or the integrity of the court."  <u>Id.</u> at
1361.

Here, Plaintiff's claims relate to decisions
Defendants made in running the Board while Plaintiff's
counsel advised that entity.  Specifically, Plaintiff
claims Centex employees mismanaged finances, spent in
excess of revenues, and kept homeowner assessments
artificially low, while they served as Board members.
(FAC ¶¶ 17-19.)  During the period of the alleged
mismanagement, Peters & Freedman advised the Board
members on how to manage the property, assisted in
collecting delinquent accounts and in choosing a
management company, and advised the Board on turnover to
the homeowners.  The Court therefore finds Peters &
Freedman's current representation of Plaintiff in an
action challenging these management decisions creates an
appearance of professional impropriety that also
necessitates disqualification.

## VI. CONCLUSION

21

1     For the foregoing reasons, the Court GRANTS

2  Defendants' Motion to Disqualify Peters & Freedman.

3  Peters & Freedman is directed to cease all representation

4  of Plaintiff and to turn over all files relating to the

5  prosecution of Plaintiff's action.

6

7

8

9  Dated: April 30, 2012

                       VIRGINIA A. PHILLIPS

10                      United States District Judge